[Civ. No. 27070. First Dist., Div. Three. Oct. 15, 1970.]

JACK McNICKELS et al., Plaintiffs and Appellants, v. RICHMOND UNIFIED SCHOOL DISTRICT, Defendant and Respondent.

## COUNSEL

Douglas E. Lord for Plaintiffs and Appellants.

John B. Clausen, County Counsel, Saul Fishman and Silvano Marchesi, Deputy County Counsel, for Defendants and Respondents.

## OPINION

**BROWN (H. C.), J.**—The appellants are three school teachers who claim their employer, the Richmond School District, made wrongful deductions

from their salaries for absences while on strike. It is conceded that their absences were unauthorized and that deductions for unauthorized absences are proper. Appellants contend, however, that the trial court erred in failing to order the district to use the formula prescribed in Education Code section 13520 in making those deductions.

The facts are not disputed. The appellants are employed as teachers by the respondent school district. During the 1966-1967 school year, appellants and other teachers went on strike for the period of September 12 through September 19. The respondent deducted from their salaries an amount equal to 1/179th of their annual salary for each day they were absent from work. The basis of this ratio was that the schools in respondent's district were in actual session for 179 days of that school year. Appellants claim that if deductions are to be made the formula used by the district and approved by the trial court is in violation of Education Code section 13520. By applying this code section, the ratio is conceded to be 1/282d of each teacher's salary.

Section 13520 of the Education Code states as follows: "*A person* in a position requiring certification qualifications *who serves less than a full school year* shall receive as salary only an amount that bears the same ratio to the established annual salary for the position as the time he serves bears to the annual school term. For the purpose of this section, the school term as it applies to each certificated employee shall include each day the schools of the district are in session, *each school holiday* as defined in Sections 5201 to 5210, inclusive, and Sections 5713, 5901, and 6362 of this code, each day of teachers' institute and any other day when the employee is required by the governing board to be present at the schools of the district or to perform services for the district, and the employee shall be deemed to have served the district on each of said days unless he fails to perform the duties required of him for the day *and is not entitled to leave of absence from such duties with pay*. This section shall not be so construed as to prevent the payment of compensation to a person while on leave of absence when the payment of the compensation is authorized by law." (Italics added.)

Under the above section, the school term would include week ends and school holidays, as well as the actual days on which teaching took place. For the 1966-1967 academic year in the respondent district, this term would be for a period of 282 days. If the nonteaching days were not counted, however, there would be only 179 days on which teachers were actually performing their duties. To a teacher earning $12,000 per year, each day of absence would result in a pay loss of $42 if the formula prescribed in section 13520 is used. Under the formula followed by the trial court, the loss was $67 per day.

Thus, the precise question now before us is whether Education Code section 13520 in 1966-1967 applied to unauthorized absences.

The statute makes no distinction between authorized and unauthorized absences. Its general language, i.e., "[a] person . . . who serves less than a full school year shall receive as salary . . ." indicates that both are included. Appellants served "less than a full school year."

The respondent urges, however, that established rules of construction dictate an interpretation that will render the operation of the statute reasonable and fair rather than absurd or unjust. (*Estate of Wyman*, 208 Cal.App.2d 489, 491 [25 Cal.Rptr. 280].)

It is quite true that we are empowered to interpret the language of a statute especially if there is some ambiguity present. But here the language is plain and unambiguous. Our research on the legislative history does not shed any light on the legislative intent to restrict the application of section 13520 only to authorized absences. We do not have any hint as to whether the Legislature even considered the point.

Justice Benjamin N. Cardozo, in his work "The Nature of the Judicial Process," aptly stated the problem when he said: " '. . . the difficulties of so-called interpretation arise when the legislature has had no meaning at all; when the question which is raised on the statute never occurred to it; when what the judges have to do is, not to determine what the legislature did mean on a point which was present to its mind, but to guess what it would have intended on a point not present to its mind, if the point had been present.' " (At p. 15.)

In *Riebe* v. *Budget Financial Corp.*, 264 Cal.App.2d 576, 585 [70 Cal. Rptr. 654], the court said: " '[T]here can be no intent in a statute not expressed in its words, and there can be no intent upon the part of the framers of such a statute which does not find expression in their words.' "

In *Redevelopment Agency* v. *Malaki*, 216 Cal.App.2d 480, 487 [31 Cal. Rptr. 92], the court said: "If legislative intent on the specific point is a will-o'-the-wisp, a decisional norm is not lacking. The general objective of the provision is a prime consideration; it is to be construed with a view to promoting rather than defeating its general purpose. [Citation.] If this were the only criterion we needed, petitioner could have its writ right now. We cannot, however, achieve the lawmakers' objective by closing our eyes to the words they used."

In the instant case, the major premise of the statute, when enacted, was to provide a formula for salaries of persons working less than the school year.

Respondent urges that we add the words "authorized absence" to the statute as that is what was obviously intended.

In *Johnson* v. *United States,* 163 F. 30, 32, the court said: ". . . The major premise of the conclusion expressed in a statute, the change of policy that induces the enactment, may not be set out in terms, but it is not an adequate discharge of duty for the courts to say: We see what you are driving at, but you have not said it, and therefore we shall go on as before."

But here we cannot say that the Legislature intended something but failed to express it. We have concluded that any inequities that might result from adding to the plain words of the statute are a proper subject for legislative improvement rather than judicial interference.[1]

■ Respondent also contends that to have the statute apply to unauthorized absences would result in an unconstitutional gift of public funds in violation of California Constitution, article XIII, section 25. We are not persuaded by this argument. The Legislature has full power to prescribe terms of employment for civil employees including teachers. Section 13520 is merely one of the prescribed terms.

■ We therefore conclude that respondent school district erred in failing to use the formula for deductions from salary for the absence of appellants, as set forth in Education Code section 13520. The judgment of the trial court is reversed. The matter is remanded to the trial court with directions to order compliance with Education Code section 13520 in conformity with this opinion.

Draper, P. J., and Caldecott, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied December 10, 1970. McComb, J., was of the opinion that the petition should be granted.

---

[1]It is to be noted that Education Code section 13520 was amended in 1969 to define the words "school term" to include only the actual teaching days or days at the teachers' institute.